### The City of Iola v. Charles F. Merriman.

Railroad Company — *Township Bonds — City Bonds*. In 1881 a city of the third class had the power, under certain terms and conditions, and within certain limitations, to subscribe to the capital stock of a railroad company, and to issue its bonds in payment for the stock, although the city may have been a portion of a municipal township, which township had already subscribed for all the stock and issued all the bonds in aid of railroads which it had the power to subscribe for or issue.

*Error from Allen District Court.*

The opinion states the material facts. Judgment for plaintiff *Merriman*, at the June term, 1890. *The City* brings the case here.

*S. O. Thacher*, and *A. H. Campbell*, for plaintiff in error.

The opinion of the court was delivered by

Valentine, J.: This was an action brought in the district court of Allen county by Charles F. Merriman against the city of Iola, to recover upon certain interest coupons of certain negotiable bonds issued by the city of Iola, to pay for a subscription to the capital stock of the St. Louis, Ft. Scott & Wichita Railroad Company. The bonds and coupons were issued on July 1, 1881. They seem to be regular in form and are valid, provided the city of Iola had at the time any power to issue them. A recital is contained in each of the bonds, which reads as follows:

"This bond is one of a series of 53, each for $500, of like tenor and effect, and are issued under and by virtue of an act entitled 'An act to enable counties, townships and cities to aid in the construction of railroads, and to repeal section eight of chapter thirty-nine (39) of the Laws of 1874, approved February 25, 1876.'"

The defendant answered, setting forth as a second defense to the plaintiff's action the following, among other things:

"The defendant alleges that it is now and always has been

a city of the third class and a part of the municipal township of Iola, in the county of Allen. . . . And it further avers that said township of Iola, on or about the 11th day of August, 1880, voted and thereafter did issue to said railroad company the full amount of the bonds which it was authorized under the law to issue to any railroad corporation whatever, to wit, the sum of $33,500. . . . That the city council of said city of Iola did not, at the next city election after the passage by the legislature of the state of Kansas of an act entitled 'An act to amend section 4 of chapter 60 of the Laws of 1871, providing for the organization and government of cities of the third class; also, providing for the appointment of assessors for said cities,'— which act is chapter 55, on page 148, of the Laws of 1876 — nor did said city council at any other time, submit to the qualified voters of said city of Iola the question whether said city should be and constitute a separate township for all township purposes, and for voting and issuing bonds and subscribing stock for and in aid of building or constructing railroads."

The defendant also alleged in this second defense, that while the township of Iola had within its borders more than $150,-000 worth of real and personal property, and, indeed, more than double that amount, according to the assessed valuation thereof for each of several years prior to the issuing of the bonds and coupons in controversy, yet, according to the various assessments of the property within the city of Iola, the city never had that amount of property within its borders. The plaintiff demurred to this second defense, upon the ground that it did not state facts sufficient to constitute any defense to the plaintiff's action, which demurrer was sustained by the court; and the defendant, as plaintiff in error, brings the case to this court for review.

It is claimed that the city of Iola had no legal power or authority to issue the bonds and coupons in controversy: First, because no city of the third class has any power to issue bonds in aid of the construction of a railroad; and second, because the city of Iola, which was a city of the third class, formed a part of the township of Iola, and that the township of Iola had already issued all the bonds which it as a township was

authorized to issue under the statutes. The statutes under which the present bonds and coupons were issued, to wit, Laws of 1876, ch. 107, as amended in 1877—Laws of 1877, ch. 142, 144, (Gen. Stat. of 1889, ¶¶ 1283, *et seq.*,) provide, among other things, that under certain terms and conditions, and within certain limitations, the electors of "any county," "any municipal township," or "any incorporated city," may vote at an election called for the purpose, upon "a proposition to subscribe to the capital stock of, or to loan the credit of such county, township or city to, any railroad company constructing or proposing to construct a railroad through or into such county, township, or city," (§ 1,) and "if a majority of the qualified electors voting at such election shall vote for such subscription or loan, the board of county commissioners for and on behalf of such county or township, or the mayor and council for and on behalf of such city, shall order the county or city clerk, as the case may be, to make such subscription or loan in the name of such county, township or city, and shall cause such bonds, with coupons attached as may be required by the terms of said proposition, to be issued in the name of such county, township, or city, which bonds, when issued for such county or township, shall be signed by the chairman of the board of county commissioners, and attested by the county clerk under the seal of such county, and when issued for such city, shall be signed by the mayor, and attested by the city clerk under the seal of said city." (Section 5, as amended in 1877—Laws of 1877, ch. 144, § 1; Gen. Stat. of 1889, ¶ 1289.) Indeed, ample power is given by this statute to "any county," "any municipal township," or "any incorporated city," under certain conditions to subscribe to the capital stock of "any railroad company," and to issue its bonds in payment therefor, just as the city of Iola, which was and is an "incorporated city" of the third class, did in the present case; and such county, township or city certainly has such power unless some other statute can be found limiting the same. Counsel for the plaintiff in error refers to § 4 of the third-class-city act of 1871, as amended by § 1, chapter 55, of the Laws of 1876, as fur-

nishing such a limitation. That section, so far as it is applicable to the question now under consideration, and so far as it is necessary to quote it, reads as follows:

"Municipal corporations regulated and governed by this act shall be and remain a part of the corporate limits of the municipal township in which the same are situated for all township purposes of electing justices of the peace, constables, for the purpose of building bridges and subscribing stock in aid of constructing railroads. All elections for justices of the peace and constables, and for issuing township bonds for building bridges and railroads, shall be held at such place as shall be prescribed for holding the township elections."

This section, so far as we have quoted it, is precisely the same as the section was in 1871, and up to the time when it was amended in 1876. Section 63 of the *same third-class-city act,* which section is still in force (Gen. Stat. of 1889, ¶ 988), reads as follows:

"The council shall take all needful steps to protect the interests of the city, present or prospective, in any railroad leading from or toward the same; but they shall not take or subscribe any stock in any railroad, unless at least two-thirds of the electors of such city voting at a legal election vote in favor thereof."

And under § 35 of the same third-class-city act, which section is still in force (Gen. Stat. of 1889, ¶ 960), the city had and has the power to issue bonds for the payment of "any and all indebtedness" then existing or which might afterward be created against the city. Now it does not follow that because the city of Iola has remained and is a part of the corporate limits of the municipal township of Iola "for all township purposes," or for various "township purposes," including that of "subscribing stock in aid of constructing railroads," "and for issuing *township bonds* for building bridges and railroads," that the city might not, *as a city and for itself,* also subscribe for stock and issue its own *city bonds* in aid of the construction of railroads. When a township subscription for stock is made, the stock will, of course, be taken in the name of the township, and *township* bonds will be issued there-

for, as is contemplated by the aforesaid § 4 of the third-class-city act, and other statutes; and when stock is subscribed for by the city, the stock will be taken in the name of the city, and *city* bonds will be issued therefor, as was done in this present case. Every city, whether of the first, second, or third class, and every township in the state of Kansas, is included within the corporate limits of the county within which such city or township is situated, and is so included for all *county purposes*, and for the purpose of subscribing for stock and issuing bonds in aid of the construction of railroads; but still it will not be claimed that, because of such fact, and the particular fact that the county may subscribe for stock and issue its bonds therefor in aid of the construction of railroads, that the included city of the first or second class, or the included township, cannot also subscribe for stock and issue its *own* bonds for a like purpose; "provided, . . . in no case shall the total amount of county, township and city aid to any railroad company exceed $4,000 per mile for each mile of railroad constructed in said county." (Laws of 1876, ch. 107, § 1, as amended by the Laws of 1877, ch. 142, § 1; amended in 1887, and $2,000 instead of $4,000 prescribed — Laws of 1887, ch. 183, § 1; Gen. Stat. of 1889, ¶ 1283.) There are various limitations prescribed by the statutes upon the power of counties, townships and cities to subscribe to the capital stock of railroad companies, and to issue bonds in payment therefor, some as to amounts, and some with respect to other matters; but if the city of Iola had the power at all, under chapter 107 of the Laws of 1876, to subscribe for stock and to issue its bonds in aid of railroads, then it will not be claimed, under the facts of this case as far as they are now disclosed, that such city transcended its powers in making the present subscription and in issuing the present bonds.

The order and judgment of the district court will be affirmed.

All the Justices concurring.